# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 78 C 342 | **DATE** | 10/21/2004 |
| **CASE TITLE** | ELAINE CHAO vs. ESTATE OF FRANK FITZSIMMONS, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

MEMORANDUM OPINION AND ORDER

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion And Order. The motions to intervene and for access to those reports and the actuarial reviews, subject to possibly some redacting of the quarterly reports are granted. I request the ISC, within two weeks, to recommend any redactions he believes are appropriate in light of the views herein expressed, and I will then make any redactions I consider appropriate and grant access to the resulting materials.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | OCT 2 2 2004 date docketed | 778 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | | |
| LG | courtroom deputy's initials | 2004 OCT 21 PM 1:22 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

ELAINE CHAO, )
)
        Plaintiff, )
)
vs. ) No. 78 C 342
)
ESTATE OF FRANK FITZSIMMONS, )
et al., )
)
        Defendants. )

**DOCKETED**
**OCT 2 2 2004**

## MEMORANDUM OPINION AND ORDER

On September 22, 1982, this court approved a consent decree between the Secretary of Labor and the Central States, Southeast and Southwest Areas Pension Fund (the Fund). That was but a first step in the resolution of a number of cases relating to the administration of that long troubled fund. And it was the easiest step. The parties had cooperatively negotiated a comprehensive program for the future administration of the Fund. The Secretary of Labor, other plaintiffs and other defendants continued to litigate other issues, and those issues were not finally resolved until 1987, but the procedures for the future administration of the Fund were set in 1982.

The Consent Decree set forth detailed requirements for the continued professional management of the Fund. Further, it provided for continuing oversight of the Fund by both the Secretary of Labor and this court. The court's involvement included the appointment of an Independent Special Counsel (ISC), with broad powers to examine the future activities of the Fund and to oversee and report to the court on compliance with the Consent Decree. The ISC also had an obligation to provide to the Secretary of Labor whatever documents he or she reviewed, compiled or prepared that the Secretary requested. The Fund had a similar obligation. The ISC was required to "file quarterly reports with the Court, with copies to the

776

Secretary and the Pension Fund ...." The Consent Decree was to be dissolved after fifteen years, but could be extended. By agreement of the parties it was extended in 1997.

The net result of all this was a set of professional management guidelines, with a shared responsibility for the proper administration of the Fund with the executive director, the trustees, the Secretary and the court. And it has worked well.

The court appointed William B. Saxbe, former Attorney General of the United States, as the original ISC. He reported quarterly to the court as its "eyes and ears," and copies were furnished to the other entities having oversight responsibilities, the Secretary and the trustees. His report invariably followed the same format: a description of recent events of significance to the Fund, such as renegotiated collective bargaining contracts affecting contributions, the bankruptcy of a large employer, litigation by or affecting the Fund, and changes in the number of contributing employees and retirees. He also provided detailed financial information respecting investment returns, disbursements, expenses, Fund balances, and the like. That information was backed by copies of the financial and analytical reports to the trustees.

Included in the ISC reports were, from time to time, the ISC's subjective judgments concerning matters that might affect the Fund in the future, such as the likelihood that Congress or the Internal Revenue Service might act on some pending proposal, or that some large employer might take some action that would affect the Fund. When William Saxbe retired and Frank J. McGarr, former Chief Judge of the District Court for the Northern District of Illinois, was appointed in his stead, Judge McGarr followed the same format.

I have not, until recently, considered those reports as court records, nor has the ISC. For over twenty years those reports have been furnished to me by one I considered my informational adviser and they have provided no basis for judicial action – none was

necessary. They provided me with information and insights in a form more convenient and more detailed than by a meeting in chambers. That does not mean that no judicial action has been taken since 1982. With some frequency the court has been called upon to approve some decision requiring judicial approval under the Consent Decree. These include approval of new trustees, changes in investment policies, minor modifications of the Consent Decree, reallocation of assets, and changes in named fiduciaries, investment managers and real estate investment managers. In each instance, motions, available to the public, were filed and the Secretary responded by filed submissions. None had a basis in an ISC report.

Only recently has any ISC report, and related materials submitted to the court, been the basis for judicial action, and that has led to the three motions presently pending. Two, filed July 15, 2004, by Joseph T. Burke, Jr., Michael R. Brody and Brent Lindberg, move first to intervene for the limited purpose of seeking disclosure of the ISC's quarterly reports, and then for their disclosure. The other, filed by the New York Times a few days later, seeks similar relief. The motions purport to seek the quarterly reports for the entire 22 years, but it is obvious from the proposed interveners' submissions that their interest is focused upon the benefit changes that were effective January 1, 2004, and were related to this court's Memorandum and Order of November 17, 2003.

I have long been aware that potential funding problems lurked in the future because of the Fund's decreasing number of active participants and increasing number of beneficiaries. The consequences of that increasing imbalance have been aggravated since investment returns were impacted by a falling market since the year 2000 and by the liquidation of Consolidated Freightways. Not until 2003, however, did it become clear that a funding deficiency would occur during the following year. That situation was discussed by the ISC in his August 5,

2003, quarterly report, and led to a number of conferences with the court in September 2003, and thereafter. On September 16, 2003, Buck Consultants submitted an actuarial review to the Fund and a copy was furnished to the court. That was supplemented by another actuarial review, prepared by Human Resources & Investor Solutions, dated January 20, 2004, and a copy of that report was also submitted to the court. In addition, the quarterly ISC reports since August 5, 2003, have continued to monitor the situation.

The cases reflect a tension between the sometimes need to preserve confidentiality so as to promote candor, United States v. Corbitt, 879 F.2d 224, 232 (7th Cir. 1989), B. H. v. McDonald, 49 F.3d 294, 297-99 (7th Cir. 1995), and the necessity for judicial accountability, United States v. Amodeo, 71 F.3d 1044, 1048-50 (2d Cir. 1995). The presumption is in favor of public access to judicial records, Matter of Continental Illinois Securities Litigation. 732 F.2d 1302, 1314 (7th Cir. 1984), and there must be a convincing demonstration that suppression is essential to preserve higher values and is narrowly tailored to serve that interest before the presumption is rebutted, Grove Fresh Distributors, Inc. v. Everfresh Juice Co., 24 F.3d 893, 897 (7th Cir. 1994). Ordinarily, what provides a basis for judicial action must be public. Union Oil Co. of California v. Leavell, 220 F.3d 562, 568 (7th Cir. 2000). And, ordinarily, intervention is the procedurally appropriate course to raise the issue of access, Jessup v. Luther, 227 F.3d 993, 996-97 (7th Cir. 2000).

The quarterly reports have provided a convenient means for the ISC; to update the court without conferences. While over the years they have provided useful information that was not confidential, they have also provided a means for the ISC to express subjective opinions about a variety of topics, as previously noted. Until the August 5, 2003, report, none provided any basis for judicial action. In those circumstances we doubt that the earlier

reports, over more than 20 years, can properly be deemed to be judicial documents and, even if so deemed, they should be redacted to eliminate those subjective opinions. <u>United States v. Amodeo</u>, 44 F.3d 141, 146 (2d Cir. 1995). To do so would require a very considerable effort for no apparently useful purpose, as we understand the movants to be concerned about recent events.

The August 5, 2003, quarterly report, subsequent quarterly reports and the materials submitted to the court, stand on a different footing. They led to the Memorandum and Order of November 17, 2003, and could lead to further judicial action. Clearly, then, they are judicial documents and are entitled to a strong presumption of public access. Accordingly, I grant the motions to intervene and for access to those reports and the actuarial reviews, subject to possibly some redacting of the quarterly reports. I request the ISC, within two weeks, to recommend any redactions he believes are appropriate in light of the views herein expressed, and I will then make any redactions I consider appropriate and grant access to the resulting materials.

JAMES B. MORAN
Senior Judge, U. S. District Court

Oct. 21, 2004.