UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JULIE SU, Acting Secretary of the United States Department of Labor, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>ESTATE OF FRANK E. FITZSIMMONS, et al.,<br><br>    Defendants. | No. 78 C 00342<br><br>Judge Thomas M. Durkin |
| JULIE SU, Acting Secretary of the United States Department of Labor,<br><br>    Plaintiff,<br><br>    v.<br><br>LORAN W. ROBBINS, et al.,<br><br>    Defendants. | No. 78 C 04075 |
| JULIE SU, Acting Secretary of the United States Department of Labor,<br><br>    Plaintiff,<br><br>    v.<br><br>ALLEN M. DORFMAN, et al.,<br><br>    Defendants. | No. 82 C 07951 |

**MEMORANDUM OPINION AND ORDER**

1

The Independent Special Counsel (the "ISC") tasked with ensuring compliance with two Consent Decrees in three consolidated cases has recommended the Consent Decrees' dissolution. The ISC argues that the original purpose of the Consent Decrees, which was to quell the influence of organized crime in the management of pension funds, has been achieved after a period of over 40 years. The Secretary of Labor (the "Secretary") opposes the ISC's request because the Department of Labor ("DOL") desires to continue monitoring the pension funds' management of government aid provided to the funds. For the reasons discussed below, the ISC's request is adopted, the Consent Decrees are dissolved, and this Court's jurisdiction is terminated.

**Background**

In 1978, the DOL filed suit against Frank Fitzsimmons and others in *Reich v. Fitzsimmons*, No. 78 C 342 (N.D. Ill.), alleging that the trustees of the Central States, Southeast and Southwest Areas Pension Fund (the "Pension Fund") had mismanaged Pension Fund assets by approving huge loans to applicants as a front for funneling money to organized crime. Many of the loans were delinquent. A Consent Decree was entered in that case in 1982, requiring that Pension Fund assets be largely "managed for the duration of this Consent Decree by a named fiduciary, as defined in section 402(a)(2) of ERISA," and appointed by the Court. *Fitzsimmons*, 78 C 342, Am. & Rest. Consent Decree, ECF No. 974 at 4–5. Also in 1978, the DOL filed suit against Loran Robbins and others (*Marshall v. Robbins*, 78 C 4075 (N.D. Ill.)), and in 1982, filed suit against Allen Dorfman and others (*Marshall v. Dorfman*, 82 C 7951 (N.D. Ill.),

2

alleging mismanagement of the Central States, Southeast and Southwest Areas Health & Welfare Fund (the "Health & Welfare Fund"). A Consent Decree as to the Health & Welfare Fund, entered in February 1985, also required that the Health & Welfare Fund's assets be managed by a court-appointed fiduciary. *Robbins*, 78 C 4075, Am. & Rest. Consent Decree, ECF No. 1311, at 4. Under the terms of the Consent Decrees, the Secretary consults with the Funds regarding their investment policy statements and the appointment of their Boards of Trustees. The Funds have been subject to the Consent Decrees for the past 41 and 38 years, respectively. In that time, the DOL has not found the Funds in violation of the Consent Decrees or ERISA. Two comprehensive investigation reports by the United States Government Accountability Office ("GAO") in 2016 found that:

- The Pension Fund's investment returns (4.9%) were in line with those of comparable pension plans (4.8%);
- The Pension Fund's average investment expense fee ratio was 9% lower than comparable pension plans;
- The Pension Fund's administrative expenses were 16% lower than comparable pension plans; and
- The Department's oversight of the Pension Fund under the Consent Decree has been appropriate.

The GAO had no recommendations concerning the Pension Fund's investment activities or the DOL's oversight of the Funds.

The American Rescue Plan Act of 2021 authorized the Pension Benefit Guarantee Corporation ("PBGC") to provide monetary assistance to multi-employer pension funds at risk of insolvency if they met certain criteria. In 2022, the Pension Fund submitted an application to receive Special Financial Assistance ("SFA"). The PBGC approved the Pension Fund's application, and it recently received $35.8 billion in SFA funds. The Secretary consulted with the Pension Fund on its most recent investment policy statement, which addressed how the $35.8 billion, in addition to the Pension Fund's other assets, would be managed. The Court recently approved the terms of the investment policy statement. *Fitzsimmons*, 78 C 342, ECF No. 982.

David Coar, the Court-appointed ISC for the Consent Decrees since 2011, sends Quarterly Reports to this Court regarding the Funds' management, finances, and any related issues, such as the Funds' real estate investments and any litigation against the Funds. In his Quarterly Report for the fourth quarter of 2022, dated April 4, 2023, Coar recommended that the Consent Decrees be dissolved and this Court's jurisdiction over the cases be terminated because, in his opinion, the Consent Decrees' objectives had been fully achieved. He reported that, based on his observations since 2011, the Funds' Trustees and their staff are competent, professional, and in compliance with ERISA. The Court ordered the parties to inform the Court whether they oppose the ISC's recommendation. The Funds informed the Court that, while not advocating for dissolution, they did not oppose the ISC's recommendation. The Secretary stated that, although she agreed that the Consent Decrees' objectives had been achieved, the DOL opposed dissolution of the Consent Decrees so that it could

4

continue closely monitoring the management of the $35.8 billion in SFA received by the Pension Fund.

## Discussion

### I. Legal Standards

The Consent Decree applicable to the Pension Fund provides that, after September 22, 2007:

> [T]he Pension Fund, after notice to the Secretary, may petition the Court to dissolve the Consent Decree and, absent good cause shown by the Secretary establishing a need for continuing this Consent Decree, the Consent Decree shall be dissolved.

*Fitzsimmons*, 78 C 342, Am. & Rest. Consent Decree, ECF No. 974, at 32. The Consent Decree applicable to the Health & Welfare Fund further states:

> The Court's retained jurisdiction shall include the power to modify this Amended and Restated Consent Decree upon petition of a signatory to this Amended and Restated Consent Decree or upon the Court's initiative, after notice and an evidentiary hearing, in order to accommodate changed legal or factual circumstances, as and to the extent appropriate under *United States v. Swift & Co.*, 286 U.S. 106, 119–20 (1932).

*Robbins*, 78 C 4075, Am. & Rest. Consent Decree, ECF No. 1311, at 15. Here, the Funds do not petition for the Consent Decrees' dissolution but reported that they do not oppose the ISC's recommendation. Though the quoted provisions evidence an intent for the Consent Decrees to eventually be dissolved, these provisions do not cleanly apply here because the ISC, who is not a signatory to the Consent Decrees, is petitioning for dissolution. And the provision which allows the Court to modify the Consent Decree *sua sponte* applies only to the Health & Welfare Fund. But even

5

absent language in the Consent Decrees, this Court still retains equitable power to dissolve them.

A court's equitable power to dissolve a consent decree arises under Fed. R. Civ. P. 60(b)(5), which states that a court may relieve a party from final judgment if the judgment "has been satisfied, released, or discharged, . . . or applying it prospectively is no longer equitable." In *Swift & Co.*, the case cited by the Health & Welfare Fund Consent Decree, the Supreme Court set forth the principle that a court may modify a decree of injunctive relief if the legal or factual circumstances have changed since the time of issuance. 286 U.S. 106, 119 (1932) (the question is "whether the changes are so important that dangers, once substantial, have become attenuated to a shadow."). In the context of consent decrees specifically, the Supreme Court has acknowledged that they are "not intended to operate in perpetuity." *Bd. of Educ. of Oklahoma City Public Sch., Indep. Sch. Dist. No. 89, Oklahoma Cty., Okl. v. Dowell*, 498 U.S. 237, 248 (1991). In deciding whether to dissolve a school desegregation decree, the Supreme Court stated that the "proper standard . . . is whether the purposes of the desegregation litigation, as incorporated in the decree, have been fully achieved." *Id.* at 248. Factors to be considered include:

> (1) any specific terms providing for continued supervision and jurisdiction over the consent decree;
> (2) the consent decree's underlying goals;
> (3) whether there has been compliance with prior court orders;
> (4) whether defendants make a good faith effort to comply;
> (5) the length of time the consent decree has been in effect; and
> (6) the continuing efficacy of the consent decree's enforcement.

6

*Dyer v. City of Chi.*, 1997 WL 308843, at *6 (N.D. Ill. June 3, 1997) (citing *Heath v. DeCourcy*, 992 F.2d 630, 632 (6th Cir. 1993)).

## II. Analysis

The circumstances have so changed since 1982 and 1985 that the purpose of the Consent Decrees in the consolidated cases has long since been achieved. All parties, including the Secretary, agree. But the Secretary opposes the dissolution of the Consent Decrees because the DOL wants to continue supervising the management of $35.8 billion in SFA funds the Pension Fund has received.

Though the disposition of billions in taxpayer money is cause for heightened concern, the monitoring of SFA funds was not the original purpose of the Consent Decrees. Further, the DOL and other government agencies have other avenues to supervise the Funds outside the confines of the Consent Decrees. For example, under ERISA, the DOL has the authority to enforce the fiduciary responsibility requirements of ERISA, such as the requirement that pension plans be operated prudently and for the exclusive benefit of participants. Under that authority, the DOL has broad investigatory power and can obtain and review documents and records and subpoena witnesses. *See* 29 U.S.C. § 1134. The IRS is responsible for enforcing ERISA's minimum funding requirements and has the authority to investigate plans that it believes are not in compliance. *See* 26 U.S.C. § 412. And the American Rescue Plan Act places additional obligations on plans like the Pension Fund that receive SFA funds. The Pension Fund is required to file an annual compliance certificate and the PBGC is empowered to conduct audits to ensure compliance. 29 CFR § 4262.16(i),

7

(j). The Pension Fund must also seek PBGC approval for any transfer of assets or liabilities above a certain amount. *Id.* § 4262.16(f), (h). In other words, absent the Consent Decrees, the DOL and other government agencies retain significant supervisory power over the Pension Fund.

Further, this Court is no longer concerned about the threat of the Funds being mismanaged or used as a front for organized crime, the prevention of which was the original purpose of the Consent Decrees. The Defendants in all three cases have long since passed away.[1] In short, the danger that the Funds could be used as a front for funneling money to organized crime has "become attenuated to a shadow." *Swift & Co.*, 286 U.S. at 119.

The Funds have also complied perfectly with the Consent Decrees since they were entered. As the Department, the ISC, and GAO have all acknowledged, there has been no indication or hint of wrongdoing or ERISA violations since the entry of the Consent Decrees. Such a record is almost incredible, given that it has been 41 years since the first Consent Decree was entered in *Fitzsimmons*. And relatedly, the extensive length of time the Consent Decrees have been in effect—38 and 41 years, weighs heavily in favor of dissolution. It is no longer an efficacious use of resources and time to require the fiduciary's, ISC's, and DOL's continued monitoring of the Funds' assets, Boards of Trustees, or investment policy statements. Because this

---

[1] Interestingly, Defendant Allen Dorfman was gunned down in 1983 in broad daylight at a hotel parking lot in one of the most infamous unsolved organized crime murders in Chicago history. Chris Tye, John Drummond, & Phil Walters, *40 Years Later, Gangland Murder of Allen Dorfman in Lincolnwood Remains Unsolved*, CBS News Chicago (Jan. 16, 2023).

8

Court finds that the purpose of the Consent Decrees—preventing the mismanagement Fund assets and the making of illegal loans as a front for organized crime—has long since been achieved, it is therefore equitable and appropriate to dissolve them.

## Conclusion

For the foregoing reasons, this Court adopts the Independent Special Counsel's recommendation that the Consent Decrees in 78 C 342, 78 C 4075, and 82 C 7951 be dissolved. This Court's jurisdiction over the parties and enforcement of the Consent Decrees is terminated. The Court also takes the opportunity to thank David Coar, who is the most recent ISP appointed in this case, for his excellent work. His comprehensive quarterly reports have been of critical importance to the Court in making this decision.

.

ENTERED:

*Thomas M Durkin*
_____

Honorable Thomas M. Durkin
United States District Judge

Dated: June 9, 2023